UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERAH DIANE PACK,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　Respondent. | No. 1:17-cv-01004-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF THE COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

## I.　**Introduction**

Plaintiff Terah Diane Pack seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 13, 17 and 18**.** Having reviewed the record as a whole, the Court finds that the ALJ's decision is based on appropriate legal standards and is supported by substantial evidence. Accordingly, the Court affirms the Commissioner's denial of benefits to Plaintiff.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 8.

1

## II. Procedural Background

On February 2, 2012, the Commissioner denied Plaintiff's prior application for disability insurance benefits. AR 86-89. On July 23, 2013, Plaintiff again filed an application for disability insurance benefits alleging disability beginning May 29, 2013. AR 20. The Commissioner denied the application initially on November 27, 2013, and upon reconsideration on June 4, 2014. AR 20. On June 19, 2014, Plaintiff filed a timely request for a hearing. AR 20.

Administrative Law Judge T. Patrick Hannon presided over an administrative hearing on January 7, 2016. AR 34-62. Plaintiff, represented by an attorney, appeared and testified. AR 34. An impartial vocational expert, Alina Sala, and medical expert Minh Vu, M.D.,[2] also appeared and testified. AR 34.

On January 21, 2016, the ALJ denied Plaintiff's applications. AR 20-29. The Appeals Council denied review on May 26, 2017. AR 1-3. On July 27, 2017, Plaintiff filed a timely complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Doc. 1.

## III. Factual Background

### A. Plaintiff's Testimony and Reports

Plaintiff (born December 14, 1978) began experiencing joint pain in 2009 when she was working as a veterinary technician. AR 48. In 2010, she stopped working for a year of disability leave. AR 48. When she returned to work Plaintiff found the duties of her job, such as restraining animals and inserting IVs, had become too difficult for her. AR 48. In May 2013, Plaintiff left her veterinary technician job and supported herself on state disability insurance payments, and child support from her former husband. AR 49. She moved into her mother's home to save money and briefly worked part time as a restaurant hostess. AR 49.

Plaintiff testified that she experienced pain in her hands, wrists, knees, and ankles. AR 51. Some days she did well, and some days her pain was so great as to limit her ability to perform even small tasks such as turning a door knob. AR 51. Plaintiff did not think she could perform a job that involved only sitting because she would become too stiff. AR 52. She needed

---
[2] Dr. Vu's resume specifies that his name is Vu-Dinh Minh. AR 625.

to sit or stand at will, but thought that on bad days she would be unable to work for eight hours. AR 52.

In the four months prior to the hearing Plaintiff had been treated with a new infusion that had improved her daily functioning. AR 54. Nonetheless, she still experienced two or three days a week in which she had excruciating pain and was unable to sleep. AR 54-55.

On a typical day Plaintiff woke her children, aged eight and thirteen years, and helped them prepare for school. AR 58. While the children were in school she would do things such as housecleaning or laundry before picking up the children at school and taking them to afterschool activities such as sports or dance classes. AR 58. Sometimes, Plaintiff helped in her daughter's classroom. AR 59. The family then returned home for dinner, homework, and preparation for bed. AR 58. On bad days Plaintiff's mother performed Plaintiff's tasks. AR 59.

### B. Treating Physicians' Records

In approximately 2002, Plaintiff was diagnosed with Hashimoto's disease.[3] AR 378. Plaintiff's primary care physician was R. Douglas Owen, D.O. AR 378. Dr. Owen and nurse practitioner Elaine Mello, FNP-C, treated Plaintiff's hypothyroidism, depression, anxiety and acute illnesses such as upper respiratory and sinus infections. AR 332-49, 491-524.

On April 24, 2009, magnetic resonance imagery indicated that Plaintiff's right wrist was within normal limits. AR 376. On May 2, 2012, Doppler sonographs of Plaintiff's lower left extremity showed no evidence of deep vein thrombosis. AR 375.

In June 2009, Bassan Alzagatiti, M.D., referred Plaintiff, who was experiencing joint pain, to Daniel Watrous, M.D., a specialist in rheumatology and clinical immunology. AR 378. An examination of Plaintiff's peripheral joints revealed "no significant tenderness to palpation or stress testing," and "no synovial swelling erythema, increased warmth or effusions." AR 379-80. Range of motion was not definitely limited and there was no evidence of synovitis, vasculitis, tendonitis or bursitis. AR 380. Examination of Plaintiff's spine revealed normal curvature, a

---

[3] Hashimoto's disease is an autoimmune disorder in which a patient's immune system attacks and damages the thyroid, resulting in hypothyroidism. www.niddk.nih.gov/health-information/endocrine-diseases/hashimotos-disease (accessed December 5, 2018).

3

good range of motion, and no tenderness in the sacroiliac joints upon palpation and stress testing. AR 380. Because adjustment of Plaintiff's thyroid prescription markedly reduced her joint pain, and lab testing revealed a normal erythrocyte sedimentation rate, Dr. Watrous found it unlikely that Plaintiff had rheumatoid arthritis. AR 380.

Plaintiff established a treatment relationship with Dr. Watrous, whose notes from July 2009 through October 2015, appear in the record. AR 386-481, 525-86, 597-624.[4] Dr. Watrous ultimately diagnosed rheumatoid arthritis. Although Plaintiff initially reported severe joint pain (10/10), as treatment progressed, she reported moderate pain in her neck, hands, wrists, elbows, hips, knees, ankles and feet, with the most serious pain usually occurring in her hands or wrists, or both. However, the degree of pain and the most painful joints differed from visit to visit, and her pain sometimes increased or decreased dramatically. The pain was exacerbated by immobility, over-activity, and weather changes, and alleviated by rest, heat and medications. Plaintiff frequently experienced fatigue, swelling and morning stiffness. At several appointments, Plaintiff reported stiffness lasting for most or all of the day. In 2012, Plaintiff developed a popliteal cyst in her left knee, which increased pain in that joint.

Plaintiff was treated with a variety of medications, including Remicade infusions. Various medications resulted in serious side effects, including facial boils, oral lesions and bruising. Plaintiff required frequent monitoring for disease activity (infections) and drug toxicity. From time to time, treatment with biologic medications such as Remicade and Humira was suspended to permit Plaintiff to recover from infections, including several MRSA infections and a dental abscess.

On at least one occasion treatment was suspended to permit Plaintiff to address demands of her work responsibilities, as when the veterinarian for whom she worked was to be away from the office. Dr. Watrous also noted Plaintiff's reports of struggling with job responsibilities that included restraining animals.

///

---

[4] The reports included in the record are not organized by date.

4

In support of Plaintiff's February 2011 application for state disability insurance benefits, Dr. Watrous reported that Plaintiff had rheumatoid arthritis and a MRSA infection. AR 383-84. On May 23, 2011, Dr. Watrous gave Plaintiff a note indicating that she should remain off work until September 1, 2011. AR 405, 436.

In March 2012, Plaintiff reported difficulty walking and sleeping. AR 444. Thereafter, Dr. Watrous ordered a course of physical therapy intended to relieve pain. AR 445. In 2014, Plaintiff again received physical therapy, this time to address left hand pain and inflammation.

In November 2012, Dr. Owen diagnosed depression and prescribed Wellbutrin. AR 513.

In May 2014, Dr. Watrous prepared the following note:

> [Plaintiff] is a person with significant Rheumatoid arthritis that has been difficult to manage and control. [Plaintiff] is currently receiving infusion therapy to reduce arthritis symptoms but has needed multiple adjustments to the medication regime to improve quality of life. Currently the progression of the disease has been hampered due to frequent episodes of flairs [*sic*] of Rheumatoid arthritis that has made it difficult to perform activities of daily living and a[l]low to continue to work at a full time level. [Plaintiff] is having significant pain to hands, left knee and foot and shoulders with radicular pain to left arm. These symptoms have become worse over the past couple of months. Overall [Plaintiff] suffers from Rheumatoid arthritis that needs close monitoring and management. [Plaintiff] would benefit from a reduction of stress in her life to be able to maintain quality of life. [Plaintiff's] main restriction is the ability to use hands to perform many tasks due to pain and joint swelling and tenderness.

AR 480.

In June 2014, ear, nose and throat specialist Mark E. Reader, D.O., prepared a consultation for Dr. Owen regarding Plaintiff's problems with chronic sinusitis. AR 482-86. Plaintiff had required antibiotic treatment for sinusitis ten times in the past year. Dr. Reader noted that the sinusitis was also causing recurrent bronchitis. The doctor noted a deviated nasal septum and recommended allergy therapy, nasal rinses, and a dental consultation on Plaintiff's jaw pain.

On November 18, 2014, X-rays of Plaintiff's left shoulder joints, clavicle, and hand were generally normal and without evidence of rheumatoid arthritis. AR 370-74.

5

**IV. Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

**V. The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

> specific job vacancy exists for him, or whether he would be hired if
> he applied for work.
>
> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927; 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his/her past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. §§ 416.920(a)-(f).

### VI. **Summary of the Hearing Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 20-29. The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 29, 2013. AR 22. Plaintiff's severe impairment was rheumatoid arthritis. AR 23. The severe impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). AR 23-24. The ALJ concluded that Plaintiff had the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 404.1567(b). AR 24. Plaintiff was capable of performing her past relevant work as a veterinary technician. AR 29. Accordingly, the ALJ found that Plaintiff was not disabled. AR 29.

### VII. The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Pain Testimony

Plaintiff contends that the ALJ erred in failing to provide clear and convincing reasons for rejecting Plaintiff's pain testimony. The Commissioner responds that the ALJ appropriately concluded that Plaintiff's testimony was not consistent with the record, emphasizing that the ALJ adequately contrasted: (1) Plaintiff's testimony and her treatment records; (2) symptom testimony and symptoms reported to her physician; (3) testimony of need for assistance in daily activities and failure to report such difficulties to physician; and, (4) daily activities and reported symptoms. In addition, (5) Plaintiff herself testified that her symptoms had been alleviated by infusion of new medication. The Court finds that the ALJ appropriately considered Plaintiff's credibility in the context of the record as a whole.

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Determining the extent to which a claimant is credible is the province of the ALJ, who must consider the record as a whole in reaching his/her conclusion. *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 693(9th Cir. 2009); SSR 16-3p. The ALJ's findings of fact must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's "medically determinable

///

8

impairments could reasonably be expected to produce the alleged symptoms." AR 25. The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Garrison*, 759 F.3d at 1014-15; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). It is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). "[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346. In this case, the ALJ clearly set forth his reasons for rejecting Plaintiff's testimony about the severity of her symptoms.

The ALJ began his analysis by contrasting Plaintiff's testimony that she has two or three bad days weekly on which she has difficulty using her hands, with multiple instances in the medical record in which Plaintiff described her pain as moderate and Dr. Watrous observed only mild-to-moderate tenderness. AR 25. The ALJ considered the inconsistency to indicate that Plaintiff's symptoms may not have been as severe as Plaintiff claimed in her testimony. AR 25. Similarly, Plaintiff's pain questionnaire reported multiple daily activities for which she required

9

assistance that were never noted in her treatment records. AR 25. Plaintiff herself testified that moving and taking her medications help alleviate her symptoms. AR 25.

The ALJ next considered Plaintiff's testimony concerning her daily activities. AR 25. As set forth in the factual background above, the ALJ contrasted Plaintiff's description of her long and active day of activities as a housekeeper and mother, with Plaintiff's testimony concerning her pain and other symptoms. AR 25. Plaintiff testified that she had been doing well since she began infusing a new medication four months before the hearing. AR 25.

Finally, after outlining the medical evidence of record (AR 25-28), the ALJ concluded that Plaintiff's testimony was not fully consistent with the medical evidence. AR 28. Plaintiff's primary care physician, Dr. Owen, treated Plaintiff for acute illnesses and generally did not comment on Plaintiff's arthritis symptoms. AR 25. Nonetheless, the ALJ found relevant Dr. Owens' multiple notes that Plaintiff retained normal motor strength in her upper and lower extremities, and that even when she was experiencing an arthritis flare-up she was in no acute distress. AR 25.

The ALJ also reviewed Dr. Watrous's evaluations of Plaintiff prior to the time period encompassed by this application, noting that in both 2013 and 2014 the doctor characterized Plaintiff's rheumatoid arthritis as moderate. AR 26. Plaintiff herself characterized her joint pain as mild to moderate, even at appointments at which she complained of increased joint pain and swelling. AR 26. At the same time, x-rays of various of Plaintiff's joints failed to show evidence of joint damage consistent with rheumatoid arthritis. AR 27. After discussing details of Dr. Watrous's treatment notes, the ALJ concluded that Plaintiff's symptoms were not as severe, or disabling, as she alleged. AR 26.

///

As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (Posner, J.). Because a "claimant's subjective statements may tell of greater limitations than can medical evidence alone," an "ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989)). *See also Bunnell*, 947 F.2d at 347 (when there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his/her symptoms solely because they are unsupported by medical evidence). "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Id.* at 345 (internal quotation marks and citations omitted).

Nonetheless, the law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). An ALJ properly considers whether the medical evidence supports or is consistent with a claimant's pain testimony. *Id.*; 20 C.F.R. §§ 404.1529(c)(4) (symptoms are

11

determined to diminish residual functional capacity only to the extent that the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence"). A claimant's statement of pain or other symptoms is not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (Oct. 25, 2017). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair*, 885 F.2d at 603.

An ALJ may reject symptom testimony that is contradicted by or inconsistent with the record and, as long as other reasons are provided, lacking the support of objective medical evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (holding that the ALJ did not err in rejecting Carmickle's testimony that he could lift ten pounds occasionally in favor of a physician's opinion that Carmickle could lift ten pounds frequently); *Rollins*, 261 F.3d at 857; *Tonapetyan*, 242 F.3d at 1148. The ALJ in this case appropriately concluded that Plaintiff's daily activities were not as limited as she alleged. AR 25.

If the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. The Court will not second guess the ALJ's assessment of Plaintiff's credibility in this case.

**VIII.    The ALJ's Evaluation of Medical Evidence**

Focusing solely on Plaintiff's limitation to occasional handling and fingering, Plaintiff challenges the Commissioner's determination of her residual functional capacity contending that the ALJ erred by giving little weight to the opinions of Dr. Watrous and the agency physicians, all of whom opined that Plaintiff was limited to occasional handling and fingering. Doc. 13 at 7-8. Plaintiff argues that because the opinions of Dr. Watrous and the agency physicians were similar

the ALJ should have adopted their opinions of Plaintiff's residual functional capacity instead of the opinion set forth in Dr. Vu's expert testimony, The Commissioner disagrees, contending that the ALJ properly accepted Dr. Vu's opinion, which was supported by substantial evidence in the record as a whole. Doc. 17 at 10. The Court finds that the ALJ properly relied on the opinion of Dr. Vu.

### A. Medical Opinions

#### 1. Agency Physicians' Opinions

On November 26, 2013, agency physician W. Jackson, M.D., opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, or walk about six hours in an eight-hour work day; and push or pull twenty pounds occasionally and ten pounds frequently. AR 69-70. Plaintiff had an unlimited ability to balance; could frequently stoop; and could occasionally kneel, crouch, crawl, climb stairs, ramps, ladders, ropes or scaffolds. AR 70. Her ability to reach and feel was unlimited, but she was limited to only occasional handling and fingering for both hands. AR 70-71. On April 17, 2014, agency physician E. Wong, M.D., reached the same conclusions in the reconsideration evaluation. AR 80-82.

#### 2. Treating Physician's Opinions

On October 9, 2014, Dr. Watrous prepared a physical residual functional capacity assessment for Plaintiff. AR 357-68. He opined that Plaintiff could lift and carry less than ten pounds occasionally and frequently; stand and walk at least two hours in an eight-hour workday; and sit less than six hours in an eight-hour workday. AR 358. Plaintiff had limited ability to push and pull with her upper extremities and less grip strength. AR 358. The doctor explained that his exam revealed swelling and tenderness of Plaintiff's wrists and [indecipherable] joints, exacerbated by repetitive movements and gripping. AR 358. She could frequently balance;

occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds. AR 359. Left knee tenderness and swelling made repetitive bending, stooping and climbing difficult and exacerbate her RA pain, making her medications less effective. AR 359. Plaintiff's pain also put her at high risk for falls. AR 359. Because of swelling and tenderness of the wrist and MCP joint, Plaintiff had limited ability to reach in all directions, handle and finger, although she had unlimited ability to feel. AR 360. She experienced wrist swelling and tenderness, exacerbated by repetitive hand movements. AR 360. Her grip strength was reduced. AR 360. Plaintiff should avoid even moderate exposure to extreme heat or cold, wetness, humidity, vibration and environmental hazard, which could exacerbate her arthritis pain and swelling. AR 361. Dr. Watrous reported no evidence of limitation in any category included on the mental residual functional capacity assessment. AR 367-68.

On September 30, 2015, Dr. Watrous completed an arthritis medical source statement. AR 592-95. The doctor diagnosed rheumatoid arthritis with a fair prognosis, but likely to last more than twelve months. Plaintiff's symptoms included joint pain, swelling and stiffness; fatigue; weakness; bone pain; wrist pain and weakness; and multiple joint paint most commonly in knees, wrists, hands, shoulders, elbows and feet. Pain could be described as burning, sharp, grinding, sore and stiff, and occurred at various levels. Pain worsened with overactivity, weather changes, cold, insufficient activity and prolonged sitting and standing. The range of motion was reduced in Plaintiff's hands and wrists. Other positive signs of disease were joint warmth, tenderness, reduced grip strength, redness and swelling. Although Plaintiff's condition was currently stable, her condition could be affected by depression and anxiety. Side effects of Plaintiff's medications included fatigue, stomach upset, and flare of joint pain after treatment.

///

Dr. Watrous opined that Plaintiff could walk one to two blocks without rest or severe pain. In an ordinary workday she could occasionally lift ten or fewer pounds and rarely lift twenty pounds. She could sit for about one hour at a time before needing to change position. Plaintiff could sit and stand, or walk about two hours in an eight-hour work day. She needed to be able to sit or stand at will and walk for about ten minutes about every 60 minutes. In the course of a work day, Plaintiff would sometimes need one or two unscheduled breaks to sit quietly for ten minutes. With prolonged sitting, Plaintiff should intermittently elevate her legs to the level of her loins ten to twenty per cent of the time. She did not require a cane or other assistive device. Plaintiff could frequently twist, occasionally climb stairs or ladders and rarely stoop, crouch or squat.

Plaintiff had significant limitations with reaching, handling and fingering. She could grasp, turn and twist items with her hands twenty to thirty per cent of the work day; perform fine manipulations with her fingers twenty to thirty per cent of the workday; reach in front of her body sixty per cent of the workday; and, reach overhead forty percent of the workday.

Plaintiff was capable of low stress work. She would have good days and bad days and was likely to miss four days monthly due to impairments or treatment. She could be expected to be off task about twenty percent of the time.

### 3. **Medical Expert Testimony**

Dr. Vu opined that Plaintiff's rheumatoid arthritis did not meet or equal any listing for inflammatory joint disease. AR 37. He noted that Dr. Watrous's treatment notes were contradictory, and that Dr. Watrous himself questioned whether rheumatoid arthritis was the correct diagnosis. AR 38. Although Plaintiff had positive results for the RA factor, which is indicative of rheumatoid arthritis, and ANA, which is indicative of lupus, Dr. Vu thought it

15

unlikely that Plaintiff had an autoimmune form of arthritis in the absence of synovitis, which is an inflammation of a joint, and positive tests for inflammation. AR 38-39. He suggested that Plaintiff had "a very minor RA without any implication on the work capacity." AR 39. Dr. Vu opined that Plaintiff could sit for six hours and perform medium work without any handling restrictions. AR 39.

### B. Applicable Law

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen*, 80 F.3d at 1285. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## C. The ALJ's Determination is Specific, Legitimate and Based on the Record as a Whole

The ALJ first rejected Dr. Watrous's 2011 letter to the state disability insurance plan as having little probative value given the passage of time.[5] AR 26. He added that by opining that Plaintiff was unable to work, the letter improperly constituted a determination of Plaintiff's ability to work, which is reserved to the Commissioner. AR 26.

The ALJ gave little weight to Dr. Watrous's physical residual functional capacity assessment, finding the doctor's opinions to be inconsistent with his observations of "only mild to moderate tenderness during his examinations of [Plaintiff]," and not supported by the objective findings in his records of treating Plaintiff. AR 28. Although the ALJ did not discuss each individual piece of supporting evidence, the hearing decision provides numerous citations to the record in support of his conclusions. AR 28. The Court has reviewed these nineteen citations and discovered that with two exceptions, Dr. Watrous's physical examinations of Plaintiff's joints indicated only mild to moderate tenderness.[6] *See* AR 544 (6F-168), AR 550 (6F-174), AR 556 (6F-180), AR 559 (6F-183), AR 562 (6F-186). The ALJ did not cite four additional joint examinations that also reported only mild or moderate tenderness. *See* AR 480 (6F 104), AR 428 (6F 152), AR 476 (6F-100), AR 534 (6F-158). The first exception, included in the record at AR 547 (6F-171), was consistent with the other treatment notes in that it reported mild to moderate joint pain, but it also noted a tender nodule in the left elbow that impeded arm movement. Similarly, AR 553 (6F-177) reported moderate joint pain except for left shoulder pain and difficulty in rotation, and an inflamed left clavicle. Similarly, the ALJ gave little weight to the opinions of the agency physicians, Drs. Jackson and Wong, stating, "[T]heir opinion is

---

[5] The 2011 letter falls within the time period already addressed by Plaintiff's prior application for disability insurance benefits.
[6] The hearing decision includes references to documents within exhibit 7F. The cited documents are duplicates of previously cited documents included within 6F.

17

inconsistent with the claimant's treatment records, which do not contain objective findings to support such restrictive limitations." AR 28.

In contrast, the ALJ gave great weight to Dr. Vu's testimony that Plaintiff was capable of a full range of medium work with no handling restrictions. AR 27. The ALJ favored Dr. Vu's opinion because "it was consistent with the claimant's treatment records, which contain few objective findings and repeatedly document only mild to moderate symptoms." AR 27.

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The Court is not required to accept Plaintiff's characterization of her treatment records. Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as well. When the evidence could arguably support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

### IX. Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of

///

///

///

Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff, Terah Diane Pack.

IT IS SO ORDERED.

Dated: **December 13, 2018**        /s/ Gary S. Austin
UNITED STATES MAGISTRATE JUDGE

19